Alicia Funkhouser, AZ Bar No. 022756
ELY, BETTINI, ULMAN, ROSENBLATT & OZER
3200 North Central Avenue, Ste. 1930
Phoenix, Arizona 85012
602.230.2144
afunkhouser@eburlaw.com

Jacob M. Tubbs, *Pro Hac Vice*
Garrett Owens, *Pro Hac Vice*
PRICE ARMSTRONG, LLC
2226 1st Avenue South, Ste. 105
Birmingham, Alabama 35233
205.208.9588
jacob@pricearmstrong.com
garrett@pricearmstrong.com
*Pro Hac Vice Admission to be filed*
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Harry Lavine, | Case No.: |
| Plaintiff, | |
| vs. | **CLASS ACTION COMPLAINT** |
| Harley-Davidson Motor Company Group ,LLC, | |
| Defendant. | |

## **CLASS ACTION COMPLAINT**

Plaintiff Harry Lavine, on behalf of himself and other Arizona residents similarly situated, brings this action against Harley-Davidson Motor Company Group, LLC ("Harley-Davidson"), and alleges as follows:

## **INTRODUCTION**

1.     This action arises from Harley-Davidson's sale of tens of thousands of motorcycles with a hidden and dangerous defect in their antilock braking systems ("ABS"). These subject motorcycles all have a defective wiring harness that will

uniformly fail under normal operation and far short of their intended lifespan, causing the ABS to cease functioning without warning or any obvious sign to the rider. The Class Motorcycles at issue are inherently flawed products because each and every one of them is guaranteed to manifest the defect.

2.      Harley-Davidson instructs its riders to use different, nearly opposite braking techniques in emergency situations, depending on whether they have ABS-equipped motorcycles or not. The braking technique Harley-Davidson recommends for an ABS-equipped motorcycle, when used on a non-ABS motorcycle, will, in Harley-Davidson's own words, cause a locked wheel that "can cause loss of vehicle control . . . result[ing] in death or serious injury."

3.      Harley-Davidson knew of this specific wiring harness defect since at least 2008, before Plaintiff purchased his motorcycle. Despite knowing of the wiring harness defect since at least 2008, despite knowing that the operator of a motorcycle with a defective ABS wiring harness would have no immediate signal that his motorcycle's ABS had failed, and despite knowing that a rider following ABS braking instructions on a motorcycle lacking it could apply the brakes in such a way as to cause serious injury or death, Harley-Davidson has taken no action to disclose the existence of this material safety defect nor its consequences to owners and operators of these motorcycles, or to repair, replace, repurchase, or upgrade affected motorcycles.

## PARTIES

4.      Plaintiff Harry Lavine is a resident of Phoenix, Arizona. He purchased a new 2009 Electra Glide Classic in 2008 from Chesters Harley-Davidson—now known as Desert Wind Harley-Davidson—in Mesa Arizona.

5.     Defendant Harley-Davidson is a Wisconsin entity with its principal place of business in Milwaukee, Wisconsin.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2). The amount in controversy for the proposed Class as defined herein and Harley-Davidson exceeds $5,000,000 exclusive of interest and costs. Minimal diversity is present as at least one member of the class—Plaintiff Harry Lavine—is a resident of a state—Arizona—different from the only member of Harley-Davidson Motor Company Group, LLC—Harley-Davidson, Inc; a Wisconsin corporation.

7.     This Court has personal jurisdiction over Harley-Davidson in this matter. Plaintiff Harry Lavine purchased his Harley-Davidson Class Motorcycle that is the subject of this suit in Arizona from a Harley-Davidson dealer. Through the placement and sale of this motorcycle in this State, Harley-Davidson purposefully availed itself to the benefits and protections of this State and that contact is related to this suit.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that Plaintiff Harry Lavine is a resident of this District, many of the acts and transactions giving rise to this action occurred in this District, and Harley-Davidson is subject to this Court's jurisdiction in this action.

## CLASS ACTION ALLEGATIONS

9.     Plaintiff brings this action as a class action pursuant to Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure, and proposes the following class:

> All individuals and entities in Arizona who purchased or leased
> a model year 2008 – 2010 Harley-Davidson Touring or CVO
> Touring model Motorcycle (the "Class Motorcycle").

10.     Excluded from the proposed class are those who purchased the products for resale; members of the federal judiciary who preside over this case and their relatives; and Harley-Davidson's officers, directors, and employees.

## Typicality And Numerosity

11.     The Claims of the named Plaintiff Lavine are typical of the claims of the Class. Plaintiff's claims are typical of those of other members of the Class as there are no material differences in the facts and law underlying the claims of Plaintiff and the Class, and by prosecuting his claims, Plaintiff will advance the claims of the class members.

12.     While the exact number of class members is unknown to Plaintiff now, the Class—upon information and belief—contains thousands of members. The potential class members are so numerous that joinder of all members of the Class is impracticable.

## Commonality And Predominance

13.     This action involves questions of fact common to all class members because all class members purchased or owned Harley-Davidson motorcycles containing the defective ABS and were subject to the same material omissions from Harley-Davidson. Such common questions of law and fact at issue for the class include, but are not limited to:

a.     whether the Class Motorcycles contain a defect;

b.     whether Harley-Davidson made false representations about the ABS on the Class Motorcycles in violation of Arizona's Consumer Fraud Act;

c.     whether Harley-Davidson failed to disclose the existence of the ABS defect or its consequences;

- 4 -

d.      whether Harley-Davidson's representations and omissions were material;

e.      whether failing to disclose the existence of the defect and its consequences is an actionable omission under Arizona law;

f.      whether Harley-Davidson intended to undertake their representations and omissions;

g.      whether Harley-Davidson's representations and omissions were in connection with the sale or advertisement of merchandise;

h.      whether class treatment of the claims asserted herein is appropriate;

i.      whether Plaintiff and the class members are entitled to the relief sought herein.

14.     These common questions of law and fact among all class members predominate over any issues affecting individual members of the class.

## **Superiority**

15.     Class treatment of the claims set forth herein is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed class members to prosecute their claims individually. Absent a class action, a multiplicity of individual lawsuits would be required to address the claims between class members and Harley-Davidson, and inconsistent treatment and adjudication of the claims would likely result.

16.     The litigation and trial of Plaintiff's claims is manageable. The defects affecting the subject 2008-2010 Harley-Davidson Touring model motorcycles were common across all models and model years of the subject motorcycles, and Harley-Davidson maintains records making these motorcycles, and their purchasers, easily

identifiable. The consistent provisions of the relevant laws, and the readily ascertainable identities of the subject motorcycles and many class members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

17.    Unless a class-wide injunction is issued, Harley-Davidson will continue to ignore and cover up information concerning the dangerous defect affecting all the subject Harley-Davidson motorcycles, and the members of the Class will continue to be deprived of a fix to this dangerous problem, and potentially remain endangered.

**Harley-Davidson Has Acted And Refused To Act On Grounds**

**Applicable To The Class As A Whole**

18.    Under Federal Rule of Civil Procedure 23(b)(2), Harley-Davidson has acted and refused to act on grounds that apply generally to the Class as a whole, making injunctive relief appropriate.

19.    The conduct at issue—Harley-Davidson's practices in making misrepresentations and refusing to disclose the existence of a dangerous defect in 2008–2010 Touring and CVO Touring models, and doing so in a way that makes its affirmative representations misleading—apply to all members of the putative Class equally. This conduct is ongoing. A finding that such conduct is unlawful and changes to those practices will apply to all class members equally.

**FACTUAL ALLEGATIONS**

**Allegations Common To All Class Members**

20.    Harley-Davidson manufactures motorcycles for sale to the public and advertises the products it manufactures.

- 6 -

21.    Harley-Davidson added an optional anti-lock braking system ("ABS") to its 2008 model year Touring and CVO Touring model motorcycles, which went on sale to the public in September 2007.

22.    Because it was an optional feature, Harley-Davidson charged significantly more for motorcycles with ABS as opposed to previous and non-ABS motorcycles. For instance, the list price of a 2007 Harley-Davidson Road King Classic was $18,255.[1] The list price of a 2008 Harley-Davidson Road King Classic with ABS was $19,320.[2] Harley-Davidson suggested a list price of $795 for the ABS option on its Touring and CVO Touring motorcycles.[3]

23.    In 2007, in press releases distributed to the general public, promotional brochures, and model descriptions on all class motorcycles, Harley-Davidson advertised and represented the benefits of its ABS to its customers, claiming that they were superior to other braking systems and that they would function under all operating conditions, especially in emergencies:

**NEW ON TOURING MODELS FOR 2008**

New Brembo Brakes with available Anti-Lock Braking System (ABS): New high-performance Brembo brakes and a factory-installed ABS option are available on all 2008 Touring models. Incorporating the latest in braking technology, the new Harley-Davidson Brembo brakes offer consistent braking and stopping power under all operating conditions. Besides improved brake performance and feel, the Touring motorcycles retain their

---

[1]    Pricing information obtained from NADA Bluebook Price Guides, found at https://www.nadaguides.com/Motorcycles/2007/Harley-Davidson/FLHRC-ROAD-KING-CLASSIC-1584cc/Values, last visited April 11, 2019.

[2]    *Id.* at https://www.nadaguides.com/Motorcycles/2008/Harley-Davidson/FLHRC-ROAD-KING-CLASSIC-1584cc/Values, last visited April 11, 2019.

[3]    *Id.*

distinctive Harley-Davidson style. This world class braking system comes to the Touring line with proven capability directly from the VRSC line of performance custom motorcycles. The all-new ABS feature is designed to help the rider maintain control during emergency stopping situations, especially those that happen in less-than-ideal conditions. [4]

24.    Harley-Davidson also touted the ABS performance in its product catalogs that were distributed to the public:

**ABS**

Harley-Davidson's independent Anti-Lock Braking System is designed to help you maintain control during braking events, especially those that happen in less than optimum conditions. Engineering and styling worked together to make sure the system is not only designed and carefully tested to work superbly, but that it is also engineered not to interfere with style. [5]

25.    Harley-Davidson also made representations about the efficacy of safety benefits of the ABS in a promotional video distributed to the public through posting on YouTube.com and other methods. In that video, posted on Youtube.com on June 30, 2008, but in existence before, Harley Davidson stated:

No matter where you go, no matter how fun the ride it eventually has to come to a stop. And when it's an emergency stop on dry pavement, gravel, leaves,

---

[4] Harley-Davidson Media Release Regarding 2008 Touring Models (obtained from https://www.topspeed.com/motorcycles/motorcycle-news/2008-harley-davidson-touring-models-a-sweet-way-to-ride-ar39443.html, last visited June 3, 2019). The language quoted was part of a media release created by Harley-Davidson regarding the 2008 Touring Models.

[5] Harley-Davidson, 2008 Motorcycles – the 105th Model Year. This is promotional literature created and distributed by Harley-Davidson to induce potential customers to purchase motorcycles, including class motorcycles.

rain, or any slick surface, maintaining control of the bike can be a challenge. That's what your Harley-Davidson anti-lock brake system is all about: control. Its purpose is to help you maintain control of your bike when braking in a straight-line emergency situation . . . . Equipping you with the tools you need to prevent uncontrolled wheel lockups and washouts caused by improper braking.

. . . ABS-equipped motorcycles provide the best emergency braking performance overall . . . .

Used properly, your ABS your optional, factory-installed anti-lock braking system will help you reduce risk in real-world riding conditions. Simple, effective, elegantly packaged: Harley-Davidson ABS.[6]

26.    Harley-Davidson made and continued to make these and other such representations even after it knew that the wiring harness and ABS on the class motorcycles were prone to fail. This includes the time up to and after Plaintiff purchased his motorcycle.

27.    Harley-Davidson instructed its riders to brake differently depending on whether they were riding a motorcycle with or without ABS. On motorcycles **with** ABS, Harley-Davidson instructed riders facing an emergency braking situation to maintain continuous braking pressure on the brakes until the motorcycle had slowed sufficiently, and told them "[d]o not modulate or 'pump' the brake controls. The wheels won't lock until the end of the stop."[7] On motorcycles **without** ABS, Harley-Davidson instructed

---

[6]   Video "Harley-Davidson: Anti-lock Braking System" (accessed via https://www.youtube.com/watch?v=YQ6R8vNm7_M, last visited June 5, 2019)

[7]   2008 Harley-Davidson FLHR Road King Owner's Manual, p. 6 (obtained from https://ownersmanuals2.com/harley-davidson/road-king-classic-2008-owners-manual-66565, last visited April 11, 2019),  p. 39.

riders facing an emergency to release and reapply the brakes when a wheel began to skid.[8]

Harley-Davidson warned riders on non-ABS motorcycles ***not*** to brake strongly enough to

lock the wheels: "A locked wheel will skid and can cause loss of vehicle control, which

could result in death or serious injury."[9]

28.     Put simply, Harley-Davidson instructed its riders to use different,

functionally opposite braking techniques in emergency situations, depending on whether

they had ABS-equipped motorcycles or not. The braking technique Harley-Davidson

recommended for an ABS motorcycle, when applied on a non-ABS motorcycle could, in

Harley-Davidson's own words, result in a locked wheel that "can cause loss of vehicle

control . . . result[ing] in death or serious injury."

29.     As early as 2008, Harley-Davidson learned through its own internal testing

protocols, and through customer complaints relating to ABS issues—mostly from law

enforcement agencies—that were not disclosed to the public, that the ABS on its Touring

and CVO Touring model motorcycles was malfunctioning due to wire breakage in the

ABS wiring harness.

30.     In Harley-Davidson's own durability testing of Touring Models in 2008, it

discovered that due to a defect in all Touring models, wires connecting the front wheel-

speed sensor to the motorcycles' engine control unit (ECU) – a critical component of the

ABS – were prone to breakage during normal operation.

31.     Harley-Davidson's testing of the 2008 Touring models revealed that the

normal motion of turning the front wheel back and forth would lead to breakage in the

wires connecting the speed sensor to the ECU in an abnormally short time – far shorter

---

[8]    2008 Harley-Davidson FLHR Road King Owner's Manual, p. 6 (obtained from
https://ownersmanuals2.com/harley-davidson/road-king-classic-2008-owners-manual-
66565, last visited April 11, 2019), p. 38.
[9]    *Id.*, pp. 32, 38, and 39.

than the expected lifespan of the subject components – and with no obvious signal to the owner that the wires had been damaged.

32.     Harley-Davidson knew that, if those wires broke, the ABS would become non-functional, leaving the motorcycle with only standard "foundation" braking— requiring a completely different set of braking techniques to stop the motorcycle in an emergency.

33.     Harley-Davidson's testing of the 2008 models also revealed that the defect manifested itself in a largely undetectable way. The ABS warning light was designed to alert the rider that the ABS was no longer functioning by detecting a loss of electrical current in the system. However, because the defect causes fracturing of the subject wiring, the electric current is inconsistent; in one instant the current may be flowing and in the next it may not. In sum, Harley-Davidson's testing revealed that the ABS warning light was insufficient to alert the rider as to whether or not the ABS was functioning. The ABS warning light did not function, did not function regularly, and was otherwise insufficient to alert riders.

34.     Upon information and belief, a rider with a malfunctioning ABS could face an emergency, apply the brakes exactly as instructed by Harley-Davidson, and, with no notice that his motorcycle had a non-functioning ABS, lock the wheels – potentially causing a sudden, violent, loss of control that, as Harley-Davidson warned, could result in death or serious injury.

35.     Harley-Davidson received complaints of ABS problems from private citizens and from municipalities whose motorcycle law enforcement officers had experienced ABS failures. These complaints were not made known to the public.

36.    Harley-Davidson continued to sell 2008 Touring and CVO Touring motorcycles with these same exact problems after learning of them and without making any disclosure about the issue. Additionally, Harley-Davidson's 2009 and 2010 Touring and CVO Touring model motorcycles contained the same defective ABS wiring harness as its 2008 models, yet Harley-Davidson changed nothing in its instructions to its riders, in its communications to consumers, in its service bulletins to its dealers, nor in its dealings with state and federal safety regulatory agencies. Harley-Davidson sold model year 2009 and 2010 Touring and CVO Touring with the same ABS defect, again without any disclosure as to the issues with the system.

37.    While Harley-Davidson began and continued work on a design change that would alleviate this issue, it instructed its dealers to continue to service motorcycles with the existing, defect ABS system without changing any components or disclosing to the owners that this defect existed. Harley-Davidson sold tens of thousands more defective Touring and CVO Touring motorcycles in both 2009 and 2010, despite learning of the problem in 2008.

38.    Despite knowing that these expensive, powerful motorcycles contained a hidden and dangerous defect in their braking systems that could lead to serious injury or death, Harley-Davidson did nothing whatsoever to notify its owners or dealers of these issues, or to retrofit affected motorcycles to alleviate this problem in 2009 or 2010.

39.    Owners of defective 2008 through 2010 Harley-Davidson Touring and CVO Touring motorcycles experienced ABS failures during operation that led directly to losses of control, crashes, and serious injury.

40.    In 2016, the National Highway Traffic Safety administration began investigating complaints related to ABS problems in many Harley-Davidson motorcycles,

including the 2008-2010 Touring and CVO Touring models. These complaints stemmed from a defect in those motorcycles' hydraulic control units: if the brake fluid on affected motorcycles was not flushed every two years, the ABS in those motorcycles could fail due to a clogged valve in the ABS hydraulic control unit.

41.    Unlike the failure of Harley-Davidson's defective ABS wiring harness, the hydraulic control unit defect in these motorcycles was easy to detect: when it occurred, the motorcycle's brake lever would feel hard, and be difficult or impossible to operate. Thus, riders of a motorcycle affected with this hydraulic control unit defect would have an obvious and immediately apparent reason to suspect that their brakes were not functioning properly.

42.    At NHTSA's urging, in 2018 Harley-Davidson began a nationwide recall of its 2008-2010 Touring and CVO Touring motorcycles to correct the issue relating to the ABS hydraulic control unit.

43.    Critically, despite issuing a nationwide recall of over 175,000 motorcycles to correct a hydraulic defect in their braking systems, Harley-Davidson took no steps whatsoever to address or even disclose the separate, dangerous problem stemming from breakage of wires in the wiring harness of the 2008-2010 Touring and CVO Touring motorcycles' ABS during this recall. This course of conduct worked to obfuscate the wire breakage defect, making it practically impossible for Plaintiff and Class Members to discover it. The defective wiring harness at issue in this case was not a part of the NHTSA investigation that led to the 2018 recall.

44.    To this day, Harley-Davidson has not issued any public notice, owner communication, warranty modification, buyback program, or recall for the tens of thousands of 2008-2010 model-year Touring and CVO Touring model motorcycles with

a defective ABS system, many of which are still on the roads today, driven by unsuspecting members of the public and law enforcement agencies.

45.    Owners and operators of these defective Harley-Davidson motorcycles still believe they are riding motorcycles with an ABS that will work in all conditions – and especially in an emergency braking situation. If those operators follow the instructions provided to them by Harley-Davidson, and their motorcycles suffer wire breakage, or have already suffered a wire breakage without any warning or clear indication of nonexistent ABS to the owner, due to a defect known to Harley-Davidson since 2008, they could lock the wheels and experience a sudden loss of control leading to a crash that could result in serious injury or death.

46.    Additionally, purchasers or lessees of the defective Class Motorcycle, such as Plaintiff and Class Members, suffer an economic loss. These purchasers believed they were purchasing motorcycles with functional anti-lock brakes, for which they paid nearly $1000 over the price of a similar, non-ABS motorcycle, when in fact they were purchasing motorcycles with a braking system that is guaranteed to lose anti-lock braking performance well short of its expected life and likely during an emergency situation. It is axiomatic that such persons would not elect to pay $1000 extra for a feature that would fail to work when needed. By failing to disclose the existence of the defective ABS wiring harness, Harley-Davidson caused economic harm to all purchasers and lessees of Class Motorcycles by offering motorcycles that were less valuable than Harley-Davidson promised, or that those persons expected they were receiving.

47.    Plaintiff and Class Members paid a nearly $1000 premium for powerful, heavy motorcycles with an antilock braking system, so that if those motorcycle owners experienced an emergency situation, they would be able to safely, predictably, confidently

apply full braking power and bring their motorcycles to a controlled stop. Because of the defective components in the Class Motorcycle's ABS, these motorcycle owners instead ended up with an ABS that – when they most need to rely on it – will eventually do exactly the opposite of what its riders intend and what Harley-Davidson explicitly represents: it will fail, the brakes will lock the wheels, and a serious crash will likely ensue.

### Allegations Specific To The Class Representative

48.     Plaintiff Harry Lavine resides in Phoenix, Arizona.

49.     In 2008, Mr. Lavine began looking to purchase a new motorcycle. He saw several advertisements and promotional materials Harley-Davidson released—some of which are included above—that touted the safety and efficacy of the ABS option available on Harley-Davidson Touring motorcycles. Mr. Lavine obtained and viewed these materials at Chesters Harley-Davidson, now known as Desert Wind Harley-Davidson, in Mesa, AZ.

50.     Mr. Lavine relied upon these representations made by Harley-Davidson in forming his opinion about the ABS and, specifically, whether or not to purchase a Class Motorcycle. Mr. Lavine also relied upon Harley-Davidson's omissions in not disclosing the ABS defect described above. Harley-Davidson had knowledge of this defect prior to the sale to Mr. Lavine. The omission was material to Mr. Lavine, as it would be to every consumer. Failing to disclose that the ABS would not function for its useful life and would malfunction in a way giving inadequate notice to the rider, placing them in a dangerous situation, is logically related to the transaction and rationally significant to the parties in view of the nature and circumstances of the transaction.

51.     In approximately March of 2019, Mr. Lavine observed that his ABS light stayed illuminated while he was riding the motorcycle. After parking the motorcycle and

switching the ignition off for a short time, Mr. Lavine restarted the motorcycle and noticed that the light had gone out.

52.     This pattern repeated itself several more times during Mr. Lavine's next rides: the ABS light would occasionally come on and stay on during a ride, then not illuminate at all on the next ride. Based on the intermittent illumination of the ABS light, Mr. Lavine became unsure whether his ABS would work in an emergency situation.

53.     Mr. Lavine performed internet research to determine the cause of the inconsistent illumination of his ABS light, but was unable to find any public information explaining the issue.

54.     Mr. Lavine reported the issue to an area motorcycle mechanic, Bill Miko, who told Lavine to stop riding it until Miko was able to identify the cause of the issue. After Miko investigated the issue further, he instructed Mr. Lavine to bring the motorcycle in for repairs.

55.     Mr. Miko discovered that Mr. Lavine's ABS had malfunctioned due to the defect described above. The wire running to his front wheel speed sensor had fatigued, causing intermittent electrical current to flow through his ABS, making it intermittently non-functional. Mr. Miko repaired Mr. Lavine's ABS by replacing the defective wiring harness, at a cost of approximately $300 to Mr. Lavine.

56.     Prior to this discovery in March of 2019, Mr. Lavine did not discover, and through the use of reasonable diligence could not have discovered, the facts essential to his claims earlier because he did not know or suspect, nor have reason to know or suspect that his motorcycle had a hidden, latent defect in its ABS.

57.     This is a hidden defect. When it manifests itself, it may do so without any indication to the rider. Because of this, Mr. Lavine had no way of knowing whether it has

manifested itself in his motorcycle. Thus, Mr. Lavine had no duty to reasonably investigate beyond the steps he has already taken as a diligent motorcycle owner: he routinely maintains his motorcycle, keeps it garaged, takes it for service with qualified mechanics, and stays abreast of publicly available information concerning recalls. The statute of limitations did not begin to run until Mr. Lavine had reason to know of the defect which came through the diagnosis and repair of an expert with unique knowledge of this defect. As the date of discovery was in 2019, none of the claims contained in this Complaint are barred by any statute of limitations.

58.     Prior to March 2019, Mr. Lavine could not have made the discovery of the defect earlier using any form of reasonable diligence. Mr. Lavine cannot be charged with the level of diligence required to perform his own personal testing of a hidden wiring harness to prove that, after a sufficient number of turning movements, the subject wire running to the speed sensor would fracture and leave him without a working ABS system. This level of diligence would be patently unreasonable for an ordinary, reasonable motorcycle consumer. Therefore, the statute of limitations did not begin to run until Mr. Lavine discovered the defect in 2019.  Similarly, the statute of limitations did not begin to run for any putative class member until 2019, as the defect was not discoverable by any reasonable consumer acting diligently given its latent nature and as no relevant public information was available.

59.     Owners of Class Motorcycles like Mr. Lavine were further justified in their failure to discover the existence of the defective wiring harness on their motorcycles by the existence of a well-known yet separate, unrelated defect in their motorcycles - which became the subject of a nationwide recall in 2018. Owners of Class Motorcycles could reasonably assume that, after their motorcycles had been subject to a NHTSA-involved

recall to correct a defect in the antilock braking system, that any latent defects in that system would also have been addressed and eliminated.

60.    Prior to 2019, Mr. Lavine, putative class members, and the public were ignorant of the existence of the defects because of Harley-Davidson's conduct in concealing the defect. As alleged herein, Harley-Davidson failed to disclose the existence of the defect, preventing Mr. Lavine or any consumer from discovering or having reason to believe that the ABS wiring breakage issue existed. Not only did Harley-Davidson hide the defect from the public, it instructed dealers to continue to sell and repair motorcycles without alerting any customers that the defect existed even though it knew of the defect as early as 2008.

## CLAIMS FOR RELIEF

### First Claim For Relief

### Deception And Misrepresentations In Violation Of

### The Arizona Consumer Fraud Act

### (Ariz. Rev. Stat. § 44-1521 *et seq*)

61.    All allegations and paragraphs of this Complaint are incorporated by reference.

62.    The Arizona Consumer Fraud Act (the "ACFA") prohibits "the use or employment by any person of any deception, deceptive or unfair act or practice, [or] misrepresentation . . . in connection with the sale or advertisement of any merchandise . . . . ." Ariz. Rev. Stat. § 44-1522(A).

63.    As more fully alleged above, Harley-Davidson made multiple representations about the safety and efficacy of the ABS in connection with the sale or advertisement of merchandise.

64.     These representations and statements made by Harley-Davidson are not mere puffery, they are quantifiable and make claims about the specific or absolute performance characteristics of the Class Motorcycle. For example, whether the ABS on the Class Motorcycles was "carefully tested" can be measured based upon commonly accepted standards for testing motorcycles. Similarly, whether the ABS provided "the best emergency braking performance overall" is something that can be studied and quantified. Additionally, whether the ABS on Class Motorcycles "offer[ed] consistent braking and stopping power under all operating conditions" is similarly knowable and quantifiable.

65.     These representations were false. Contrary to the representation that the Class Motorcycles were "carefully tested," testing actually revealed that the ABS system did not work for its expected life. The Class Motorcycles do not offer "the best emergency braking performance overall" because the ABS will malfunction without alerting the rider and—because of the opposite braking techniques needed with ABS versus foundation braking—actually leads to poorer performance and gives rise to a dangerous emergency braking situation. Finally, the "braking and stopping power under all operating conditions" was the opposite of "consistent." The Class Motorcycles would—because of the known defect—exhibit wildly inconsistent braking and stopping power because they would intermittently alternate between ABS and foundation braking when the defect manifested without notice to the rider.

66.     Alternatively, Harley-Davidson's representations were deceptive in that they had the tendency and capacity to convey a misleading impression to consumers, even if there were possible non-misleading interpretations from the perspective of the least sophisticated reader, in light of all that is reasonably implied not just from what is said. From Harley-Davidson's representation that the ABS was "carefully tested to work . . ."

consumers could infer that there was no defect in the ABS that would cause it to fail prematurely which there in fact was. The statement that the ABS offered the "best emergency braking performance overall" conveyed a message to consumers that the system was superior to other braking systems in emergency braking situations, and that there were no defects that would jeopardize the performance of the braking. Harley-Davidson knew as early as 2008 that this was false.  Finally, if not outright false, the representation that "braking and stopping power" would be "consistent" leads consumers to believe that in all instances, the manner in which the Class Motorcycles brake is uniform when, again, this was not the case.

67.    Plaintiff and the class members justifiably relied upon these quantifiable representations Harley-Davidson—the manufacturer—intentionally made when deciding to purchase and use their motorcycles. Harley-Davidson's conduct in making these representations proximately caused Plaintiff and the class members to suffer damages. Plaintiff and the class members would not have purchased their Class Motorcycles had they known that Harley-Davidson's made false or misleading representations. Plaintiff and other class members have also suffered economic loss in that they have had to repair their Class Motorcycles to alleviate the defect and such loss is imminent for many more class members as the defect is guaranteed to manifest in each and every Class Motorcycle. Further, Plaintiff and class members were deprived of the benefit of the bargain as purchasers. They paid a premium for the inclusion of a functioning, non-defective ABS on their Class Motorcycles. Unbeknownst to them—but known to Harley-Davidson—the ABS was defective; it would become non-functioning far before expiration of its expected useful life and would do so in a way that would place the rider in a dangerous situation because the Class Motorcycles did not provide adequate notification. Additionally, the

defect has caused or will cause a diminution in value to each and every Class Motorcycle. When the consuming public becomes aware that the Class Motorcycles contain a defect that makes the ABS largely without value for its expected useful life, potential purchasers of Class Motorcycles will not pay a premium for inclusion of the feature as Plaintiff and class members unwittingly did. Because the ABS will fail prematurely, the defect manifesting itself in a dangerous way, purchasers will simply opt for a motorcycle without the optional ABS. This drives the resale value of the Class motorcycles down, further damaging Plaintiff and class members because of Harley-Davidson's unlawful conduct.

## Second Claim For Relief

### Material Omission In Violation Of The Arizona Consumer Fraud Act

### (Ariz. Rev. Stat. § 44-1521 *et seq*)

68.     All allegations and paragraphs in this Complaint are incorporated by reference.

69.     The ACFA prohibits "concealment, suppression or omission of any material fact with the intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of an merchandise . . . ." Ariz. Rev. Stat. § 44-1522(A).

70.     Harley-Davidson's conduct in failing to disclose the existence and consequences of the ABS defect known to it as described herein is a violation of the ACFA. As more fully described above, Harley-Davidson knew of the existence of the ABS defect as early as 2008 as well as its consequences, yet they knowingly failed to disclose the existence and consequence of this defect to Plaintiff and class members. Specifically, Harley-Davidson did not disclose that the wire running to the front wheel

speed sensor would fatigue and break far sooner that its expected life and that the rider would not be adequately warned that their ABS was not functioning.

71.     Harley-Davidson knowingly and intentionally failed to disclose the existence of the defect and its consequences with the intention that Plaintiff and the class members rely upon it when forming their opinions on the optional ABS feature, purchasing their Class Motorcycles, and riding those Class Motorcycles.

72.     This omission was material. It is central to the transaction at issue. This is so because Plaintiff and class members had a clear choice; they could purchase a motorcycle without ABS for a lower price, or they could pay a premium for the ABS which had a defect that Harley-Davidson did not disclose. Plaintiff and all of the class members made the latter choice and purchased a Class Motorcycle that they did not know was defective. For these same reasons, the omission was rationally significant to parties. Again, Plaintiff and class members made a choice that was based on the presence of the ABS. It is extremely rational, if not axiomatic, that any consumer would find significant a non-disclosed defect in an optional ABS feature for which one is charged a premium that guaranteed the system to fail far short of its life-expectancy without adequate warning, and place them in danger. Knowledge that a major component of a product—in this case an ABS for which a person pays a premium for—will prematurely fail and leave them in danger due to an insufficient warning system is precisely the type of information a buyer would be expected to rely upon in making a decision whether to purchase the product, in this case the Class Motorcycles.

73.     Stated another way, though not required to constitute a violation, Plaintiff and class members naturally relied upon this omission in deciding to purchase their Class Motorcycles due to its nature as centrally material to the transaction.

74. This material omission proximately caused damage to Plaintiff and the class members. Plaintiff and the class members would not have purchased their Class Motorcycles had they known the truth obfuscated by Harley-Davidson's omissions. Plaintiff and other class members have also suffered economic loss in that they have had to repair their Class Motorcycles to alleviate the defect and such loss is imminent for many more class members as the defect is guaranteed to manifest in each and every Class Motorcycle. Further, Plaintiff and class members were deprived of the benefit of the bargain as purchasers. They paid a premium for the inclusion of a functioning, non-defective ABS on their Class Motorcycles. Unbeknownst to them—but known to Harley-Davidson and never disclosed—the ABS was defective; it would become non-functional far before expiration of its expected useful life and would do so in a way that would place the rider in a dangerous situation because the Class Motorcycles did not provide adequate notification. Additionally, the defect has caused or will cause a diminution in value to each and every Class Motorcycle. When the consuming public becomes aware that the Class Motorcycles contain a defect that makes the ABS largely without value for its expected useful life, potential purchasers of Class Motorcycles will not pay a premium for inclusion of the feature as Plaintiff and class members unwittingly did. Because the ABS will fail prematurely, the defect manifesting itself in a dangerous way, purchasers will simply opt for a motorcycle without the optional ABS. This drives the resale value of the Class motorcycles down, further damaging Plaintiff and class members because of Harley-Davidson's unlawful conduct.

**Third Claim For Relief**

**Unjust Enrichment**

75.     All allegations and paragraphs of this Complaint are incorporated by reference.

76.     This Claim is pled in the alternative to the extent necessary pursuant to Federal Rule of Civil Procedure 8(d)(2)-(3).

77.     By receiving money for the sale of the Class Motorcycles Harley-Davidson received an enrichment.

78.     By paying for the Class Motorcycles, Plaintiff and class members suffered an impoverishment.

79.     The enrichment and the impoverishment are connected because Harley-Davidson received their enrichment from the money Plaintiff and class members paid for the Class Motorcycles.

80.     Harley-Davidson was unjustly enriched because Plaintiff and class members relied upon Harley-Davidson's misrepresentations and omissions of material facts.

81.     There was no justification for the enrichment and impoverishments and Harley-Davidson's retention of the benefits.

82.     There is no legal remedy for Plaintiff and the class members.

**DEMAND FOR JURY TRIAL**

83.     The Plaintiff and the Class Members hereby demand trial by a struck jury of all issues triable by right.

**PRAYER FOR RELIEF**

84.     Plaintiff, on behalf of himself and each member of the Class, seeks full compensatory damages allowable by law, restitution, attorneys' fees, costs, punitive

- 24 -

damages, and appropriate equitable relief including injunctive relief, a court order enjoining Harley-Davidson's wrongful acts and practices, restitution, the repair of all Class Motorcycles, replacement of all Class Motorcycles that are not capable of being repaired, the refund of money paid to own or lease all Class Motorcycles, and any other relief to which Plaintiff and Class Members may be entitled.

Dated: December 18, 2019                        Respectfully submitted,

**ELY, BETTINI, ULMAN,
ROSENBLATT & OZER**

*/s/ Alicia Funkhouser*
Alicia Funkhouser
AZ Bar No. 022756
3200 North Central Avenue, Ste. 1930
Phoenix, Arizona 85012
602.230.2144
afunkhouser@eburlaw.com

**PRICE ARMSTRONG, LLC**

*/s/ Jacob M. Tubbs*
Jacob M. Tubbs
*Pro Hac Vice*
Garrett Owens
*Pro Hac Vice*
2226 1st Avenue South, Ste. 105
Birmingham, Alabama 35233
205.208.9588
jacob@pricearmstrong.com
garrett@pricearmstrong.com

*Attorneys for Plaintiff*